IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CV-13-D

| | | |
|---|---|---|
| TOWN OF CAROLINA SHORES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CONTINENTAL INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

On April 16, 2010, Wells Fargo Bank, N.A. ("Wells Fargo") filed a motion to dismiss Continental Insurance Company Inc.'s ("Continental") third-party complaint for failure to state a claim upon which relief can be granted [D.E. 14]. As explained below, Wells Fargo's motion to dismiss is granted.

I.

Town of Carolina Shores ("plaintiff" or the "Town") is a municipality in Brunswick County, North Carolina. Compl. ¶ 6.[1] Continental, a Pennsylvania corporation which had its principal place of business in Illinois, was a large provider of insurance and surety services. Id. ¶ 7; Notice of Removal ¶ 7.[2] Calabash Lakes is a residential subdivision located in the Town. Compl. ¶ 8.

---

[1] Continental attached the Town's complaint to the third-party complaint. Third-Party Compl. Ex. A.

[2] Continental is now dissolved. Compl. ¶ 7.

In early to mid 2006, in order to purchase and develop Calabash Lakes, Portrait Homes-Calabash Lakes LLC ("Portrait Homes") obtained a $31,461,192 loan (the "loan") from Wells Fargo Bank, N.A. See Third-Party Compl. ¶ 6. The Calabash Lakes development — including lots, infrastructure, and completed and partially completed homes — secured the loan. Id.

As a condition for a final plat approval allowing Portrait Homes to develop Calabash Lakes, the Town required Portrait Homes to post a bond to ensure the completion of certain infrastructure. Id. ¶ 17; see Compl. ¶ 16. For this purpose, on September 5, 2006, Portrait Homes obtained a bond (the "bond") for $12,405,229.44 from Continental. Compl. Ex. B; see id. ¶ 17.[3] The bond identifies Portrait Homes as the principal, Continental as the surety, and the Town as the obligee. Id. at Ex. B (bond). Portrait Homes also bound its "successors" to the bond agreement. Id. The bond does not name or otherwise refer to Wells Fargo. See id.

Before completing the infrastructure and improvements described in the bond, Portrait Homes defaulted on the loan. Third-Party Compl. ¶¶ 12–13. On July 2, 2009, Wells Fargo started foreclosure proceedings against Portrait Homes, which ultimately resulted in the sale of Calabash Lakes. Id. ¶ 13. As the highest bidder at public auction, Wells Fargo became the owner of Calabash Lakes. Id. ¶¶ 13–14.

On December 23, 2009, the Town filed a complaint against Continental in Brunswick County Superior Court, alleging breach of contract and seeking declaratory and injunctive relief [D.E. 1-1]. On January 28, 2010, Continental removed the action to this court based on diversity jurisdiction [D.E. 1]. On February 24, 2010, Continental filed a third-party complaint against Wells Fargo, alleging five claims [D.E. 7]. Four of Continental's claims are based on its assertion that, "[a]s a

---

[3]The Town periodically reduced the amount of the bond, ultimately to the amount of $1,404,776.05, to reflect completed portions of the Calabash Lakes infrastructure. Compl. ¶ 21.

result of [the] foreclosure," Wells Fargo is Portrait Homes' "successor in interest" as to Calabash Lakes. See Third-Party Compl. ¶¶ 19–33, 40–44. In its remaining claim, Continental alleges unjust enrichment. Id. ¶¶ 34–39.

On April 16, 2010, Wells Fargo moved to dismiss Continental's third-party complaint for failure to state a claim upon which relief can be granted [D.E. 14]. Continental responded in opposition [D.E. 19] and Wells Fargo replied [D.E. 23].

II.

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotation omitted); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). In analyzing a motion to dismiss, a court need not accept the complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted); see also Iqbal, 129 S. Ct. at 1949–50.

In this case, the court has jurisdiction based on diversity and North Carolina law governs. "Accordingly, as to the disputed legal issue[s], [the court] must determine how the Supreme Court of [North] Carolina would rule." Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North] Carolina has spoken neither directly nor indirectly on the particular issue before [the court], [the court is] called upon to

3

predict how [the North Carolina Supreme Court] would rule if presented with the issue." Id. (quotation omitted); Pinnacle Special Police, Inc. v. Scottsdale Ins. Co., 607 F. Supp. 2d 735, 741 (E.D.N.C. 2009). In making that prediction, a court may consider opinions of the North Carolina Court of Appeals. See Twin City Fire Ins. Co., 433 F.3d at 369.

A.

Wells Fargo purchased Calabash Lakes at a foreclosure sale. Under North Carolina law, "[w]here there has been neither a consolidation nor a merger, but a mere sale by one corporation of its property to another, that sale . . . will pass the property of the selling corporation to the purchasing corporation free from claims of mere simple contract creditors." McAlister v. Am. Ry. Express Co., 179 N.C. 556, 561, 103 S.E. 129, 131 (1920) (quotation omitted). Furthermore, "the mere purchase of the assets and franchise of one corporation by another will not imply a promise on the part of the new to pay or satisfy the debts and obligations of the old." Id. (quotation omitted). As such, a purchaser of a corporation's property or assets generally "is not . . . liable for its debts, except such as are contracted or incurred in the operation, use, or enjoyment of its franchise, in the absence of an agreement to that effect." See id. (quotation omitted). Exceptions to this general rule exist where: (1) the purchasing corporation expressly or impliedly agrees to assume the debt or liability; (2) the transfer amounts to a de facto merger of the two corporations; (3) the selling corporation transferred the assets for the purpose of defrauding its creditors; or (4) the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers. See id. at 561, 565, 103 S.E. at 130–131, 133; Budd Tire Corp., 90 N.C. App. 684, 687, 370 S.E.2d 267, 269 (1988).

The third-party complaint does not allege facts to indicate that the exceptions to the general rule apply. See Third-Party Compl. ¶¶ 13–14. Nonetheless, in four claims (claims one, two, three,

4

and five), Continental alleges that Wells Fargo is liable for Portrait Homes' bond obligations because Wells Fargo is Portrait Homes' "successor" under the bond. See Third-Party Compl. ¶¶ 19–33, 40–44. Thus, whether Wells Fargo is entitled to dismissal on these claims turns on whether Continental has stated sufficient facts, accepted as true, to show that, under North Carolina law, Wells Fargo is a successor under the bond.

Unless a specialized definition is provided, North Carolina courts give the language in a contract, such as a bond, "effect according to the natural meaning of the words used." Rosi v. McCoy, 319 N.C. 589, 592, 356 S.E.2d 568, 570 (1987) (quotation omitted); Wein II, LLC v. Porter, 683 S.E.2d 707, 716 (N.C. App. 2009). In Rosi, the North Carolina Supreme Court defined "successor" as "one that succeeds or follows; one who takes the place that another has left, and sustains the like part or character; one who takes the place of another by succession." 319 N.C. at 593, 356 S.E.2d at 570 (alteration and quotation removed). Thus, "'successor' does not invariably refer to a successor in title; rather, the reader must consider the nature of the 'part or character' to be taken." Id. In Rosi, the issue was who — under the contractual clause "[t]he Developers, their successors or assigns, reserve the right to amend, modify or vacate" — qualified as "successors." See id. at 591, 356 S.E.2d at 569 (quotation omitted). The court noted that in this clause, the "part or character" was described as "'the developers,' not 'the grantors' or some similar term." Id. at 593, 356 S.E.2d at 570 (quotation omitted). The court recognized that "[a] consideration of the entire instrument, as a whole, discloses no necessity for giving the words . . . any meaning other than their natural meaning." Id. at 594, 356 S.E.2d at 571. The court concluded that the "natural meaning of the term 'successors'" as used in the clause at issue was "[s]uccessor-developers," because the "'part or character' in question was that of the developers as developers rather than as mere lot owners."

5

Id. at 593, 356 S.E.2d at 570; see Terres Bend Homeowners Ass'n v. Overcash, 185 N.C. App. 45, 51–52, 647 S.E.2d 465, 470 (2007) ("[D]efendant Overcash's relationship to Swinson is that of both successor in title and successor-developer.").

Here, the bond does not provide a specialized definition of "successor." See Compl. Ex. B (bond). Furthermore, the entire bond indicates no necessity for giving the words any meaning other than their natural meaning. See id. Thus, the interpretation of the meaning of "successors" in the bond depends upon the nature of the "part or character" to be taken by such "successors." See Rosi, 319 N.C. at 593–94, 356 S.E.2d at 570–71. In light of the "part or character" of the role of Portrait Homes under the bond, which arose from Portrait Homes' role as developer rather than as mere lot owner, the natural meaning of the term "successors" under the bond is "successor-developers." See id. at 593, 356 S.E.2d at 570; cf. Compl. Ex. B.

In opposition, Continental argues that as a successor in title, Wells Fargo is Portrait Homes' "successor" under the bond. Although Wells Fargo is a successor in title, Wells Fargo is not a successor of the "same part or character" as Portrait Homes. See Rosi, 319 N.C. at 593, 356 S.E.2d at 570. Moreover, Wells Fargo is not a developer, and Wells Fargo did not agree to act as a developer with respect to Calabash Lakes. Cf. id.; Terres Bend Homeowners Ass'n, 185 N.C. App. at 51–52, 647 S.E.2d at 470. Accordingly, Wells Fargo is not a "successor" under the bond. As such, Wells Fargo has acquired the rights and responsibilities of a mere successor in title and has not acquired obligations under the bond to which it was not a party.

In sum, four of Continental's claims (claims one, two, three, and five) against Wells Fargo are premised on the notion that Wells Fargo is a successor under the bond. See Third-Party Compl. ¶¶ 21–33, 40–44. Wells Fargo is not such a successor. Thus, the court dismisses claims one, two, three, and five.

6

B.

Continental also brings an unjust-enrichment claim against Wells Fargo. See Third-Party Compl. ¶¶ 34–39. Continental alleges that if, pursuant to the bond agreement, Continental completes the Calabash Lakes infrastructure, Wells Fargo will be unjustly enriched. See id.

Under North Carolina law, "[w]hen one party confers a benefit upon another which is not required by a contract either express or implied or a legal duty, the recipient thereof is often unjustly enriched and will be required to make restitution therefor." Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 184 N.C. App. 688, 695, 647 S.E.2d 111, 116 (2007) (alteration and quotation omitted). In an unjust enrichment case, "the focus is . . . on the circumstances, if any, which would render it unjust for the owner to keep the benefit of the improvements without compensating the improver." Wright v. Wright, 305 N.C. 345, 353, 289 S.E.2d 347, 352 (1982). Specifically, the unjust-enrichment inquiry is whether the circumstances of the case "give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000). "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party," the benefit must be "measurable," and "the defendant must have consciously accepted the benefit." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

In this case, Continental's unjust-enrichment claim is premature. Continental has not completed the Calabash Lakes infrastructure. Thus, Wells Fargo has not yet received the alleged benefit. Accordingly, Continental fails to state an unjust-enrichment claim.

Alternatively, even if the court were to assume that Continental's prospective completion of the Calabash Lakes infrastructure constitutes a measurable benefit that Wells Fargo has consciously

7

accepted, Continental's unjust-enrichment claim still fails. In Baker Construction Co. v. City of Burlington, the plaintiff, a construction company, had installed utility lines on specified property, for which it was not paid. No. COA09-13, 2009 WL 3350747, at *1 (N.C. App. Oct. 20, 2009) (unpublished). The plaintiff alleged unjust enrichment against the subsequent owner of the property, a corporation, and the City of Burlington. Id. at *2. In rejecting the plaintiff's unjust-enrichment argument, the North Carolina Court of Appeals explained:

> [P]laintiff installed the utility lines pursuant to a contract with Hard Rock Development[, the previous owner of the property]. Neither [the subsequent owner] nor City of Burlington were party to the contract. Furthermore, [the subsequent owner] took possession of the utility lines through a trustee's deed resulting from a foreclosure sale of the property formerly owned by Hard Rock Development. Thus, the circumstances under which [the subsequent owner] obtained the benefit of the utility lines does not create a legal or equitable obligation on the part of [the subsequent owner] or City of Burlington to compensate plaintiff for the utility lines.

Id. at *6. The court recognized that "[w]here a third person benefits from a contract entered into between two other persons[,] the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person." Id. (alteration and quotation omitted). Additionally, the court noted that in order to state an unjust-enrichment claim, "the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party." Id. (citing Effler v. Pyles, 94 N.C. App. 349, 353, 380 S.E.2d 149, 152 (1989)). Because the subsequent owner "acquired possession of the utility lines as a result of a trustee's deed, plaintiff did not confer any benefit directly to [the subsequent owner]." Id. at *6. Thus, the North Carolina Court of Appeals affirmed the trial court's dismissal of the plaintiff's unjust-enrichment claim. Id.

If Continental completes the Calabash Lakes infrastructure, it will do so pursuant to the bond contract Continental entered into with Portrait Homes and the Town. Wells Fargo was not a party to the bond contract. The benefit would not be conferred directly from Continental to Wells Fargo.

8

Rather, the benefit would be conferred through a third party, the Town. Furthermore, as mentioned, Wells Fargo acquired Calabash Lakes through a foreclosure sale. Thus, the circumstances under which Wells Fargo obtained any benefit concerning the prospective infrastructure does not create a legal or equitable obligation on the part of Wells Fargo to compensate Continental for it.

III.

As explained above, the court GRANTS Wells Fargo's motion to dismiss [D.E. 14] Continental's third-party complaint for failure to state a claim upon which relief can be granted.

SO ORDERED. This 26 day of October 2010.

JAMES C. DEVER III
United States District Judge